1  Mark Labaton (Bar No. 159555)
   ISAACS FRIEDBERG
2    & LABATON LLP
   555 S. Flower Street, #4250
3  Los Angeles, California  90071
   Telephone: (213) 929-5534
4  Facsimile:  (213) 955-5794
   *mlabaton@iflcounsel.com*
5
   Timothy Cornell (*Admitted Pro Hac Vice*)
6  GARDNER CORNELL
   A Professional Corporation
7  33 Mount Vernon Street
   Boston, MA   02108
8  Telephone:  (603) 277-0838
   *tcornell@gardnercornell.com*
9
   Alexander I. Dychter (SBN 234526)
10 DYCHTER LAW OFFICES
   625 Broadway, Suite 600
11 San Diego, California   92101
   Telephone:  619-487-0777
12 Facsimile:  619-330-1827
   *Alex@dychterlaw.com*
13
   Christopher A. Olsen (SBN 236928)
14 OLSEN LAW OFFICES
   1010 Second Avenue, Suite 1835
15 San Diego, California   92101
   Telephone:  619-550-9352
16 Facsimile:  619-923-2747
   *caolsen@caolsenlawoffices.com*
17
18 *Attorneys for Relators*

19
                    **UNITED STATES DISTRICT COURT**
20
                   **SOUTHERN DISTRICT OF CALIFORNIA**
21

22 | UNITED STATES OF AMERICA *ex rel.* JAMES CARTER and ROGER LENGYEL, | ) ) ) | Case No. 10-CV-1401-JLS-WVG |
|---|---|---|
| Plaintiffs, vs. | ) ) ) ) | **JOINT STATEMENT OF THE PARTIES ON PLAINTIFFS MOTION TO COMPEL** |
| BRIDGEPOINT EDUCATION, INC., ASHFORD UNIVERSITY LLC, and DOES 1-500, INCLUSIVE, | ) ) ) ) | |
| Defendants, | ) | |

The parties disagree on the scope and manner of Bridgepoint and Ashford's (the "Defendants") production. Specifically, they disagree on: 1) the custodians to be searched; 2) the time period; 3) the search should be limited to a single database; and 4) the production format of emails.

A. **Custodians**

1. **Plaintiffs' Requests**: The Plaintiffs requested all documents "in the possession, custody, or control of Bridgepoint, including any of its officers, management, employees, agents, representatives, attorneys, insurers, any persons acting on its behalf, and affiliates and departments."

2. **Defendants' Response**: "Defendants object to Instruction 1 on the grounds that it is overbroad, unduly burdensome, and oppressive to the extent it seeks documents 'in the possession, custody, or control of Bridgepoint, including any of its officers, management, employees, agents, representatives, attorneys, insurers any persons acting on its behalf, and affiliates and departments.' There are literally thousands of employees, agents, and contactors of Bridgepoint Education, Inc. and Ashford University, LLC, and this instruction is massively overbroad and unduly burdensome."

3. **Statement by the Propounding Party**: The fraud alleged is that Bridgepoint falsely certified that it was complying with Title IV's ban on incentive compensation for recruiters. Even though recruiters are the focus of this fraud, and are likely to have relevant documents, Bridgepoint refuses to produce

documents from them. Bridgepoint expanded from 332 students in 2005 to 77,892 (with a sixty-seven percent dropout rate within 19 weeks) in 2010. *For-Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success,* Senate Committee on Health, Education, Welfare and Pensions (2012) ("Harkin Report"). Bridgepoint did this while marketing a product pocked with failure. *Id.* Bridgepoint was able to do this through its recruiters. The recruiters bore the brunt of the pressure from the top of the pyramid, and the pressure was enormous. The recruiters also knew what they were told by their managers and others, and they had less incentive to cover up the truth than those who benefited most from that company's conduct. Discovery from them is within the bounds of that reasonably calculated to produce admissible evidence.

**4. Defendants' Basis for Objections:** Defendants have already proposed a custodian list of *over* 100 custodians, including custodians at corporate headquarters who could have been involved in compliance or auditing, individuals in the legal departments, and individuals in charge of compensation adjustments. Additionally, we have proposed that Relators could choose a limited number of Admissions Managers, the direct supervisors of the line-level Enrollment Advisors. Relators have responded that they want production from the more than 4,500 Enrollment Advisors. The burden which would result simply cannot be justified. Defendants are not required to perform a search where the likelihood of discovery of relevant admissible evidence is outweighed by the

burden and cost. Fed. R. Civ. P. 26(b)(2)(iii); *Zubulake I*, 217 F.R.D. at 318 ("The burden or expense of discovery is . . . 'undue' when it 'outweighs its likely benefit' . . . ."). This case is about how Enrollment Advisors were compensated, so the relevant information consists of the compensation files for those employees (which we have agreed to produce) and the relevant custodians who actually make compensation decisions. Indeed, the two Relators themselves testified in deposition that they do not know how they were compensated and that one would need to talk to their managers and directors. Further, the data that Relators seek are on backup tapes, and as discussed below, Relators' request should be denied because "the slim likelihood that new and relevant information may be discovered does not outweigh the substantial burden and expense required to retrieve the information from the backup tapes." *Helmert v. Butterball, LLC*, 2010 WL 2179180, at *7, 9 (E.D.Ark. May 27, 2010).

B. **Time Period**

1. **Plaintiffs' Requests**: The Relators requested production of documents from 2005 to present.

2. **Defendant's Response**: Defendants object to these Instructions, Definitions, and/or Requests to the extent they seek information or documents outside the relevant time period of this litigation. . .There are no allegations in the complaint, alleged with particularity or otherwise, regarding conduct post-dating the filing of Relators' complaint on July 2, 2010. Furthermore, the Court's

Order of January 14, 2014 stated that the time period alleged by relators in their First Amended Complaint is from 2005 to 2011 (ECF No. 41, at 3), and the parties' Joint Rule 26(f) Conference Report, dated June 25, 2014, stated "[s]pecifically, Relators alleged '[Ashford] falsely represented every year between 2004 and 2011 that they [were] in compliance with the HEA's prohibition against using incentive payments for recruiters for recruiting activities.'" ECF No. 50, at 5. Yet, most of Relators' Requests seek information to "the present," while another purports to cover a period of nearly nineteen years, while still others contain no discernible temporal scope. This is improper, and Defendants will produce documents, if any, in response to Relators' Requests only to the extent they fall within the time period of March 2005 to July 2, 2010.

3. **Statement by Propounding Party**: The Complaint alleges claims extending "through the present date." Compl. ¶¶ 52, 55. On June 24, 2013, Bridgepoint filed a Motion to Dismiss this action, and neither raised an objection to this timeframe nor asked the court to limit the scope of the Relators' claims. On January 8, 2014, the Court denied the Bridgepoint's Motion to Dismiss and allowed the Complaint to move forward in its entirety. Dkt. 41. The Relators have the right to the discovery for the entire period of their Complaint. Moreover, any current documents would be relevant to prior company actions.

4. **Defendants' Basis for Objection**: Relators' claims in their complaint are limited to periods prior to 2011, yet they now demand discovery well beyond

the 2011 period. But "[t]he scope of discovery is determined by the claims as alleged in the complaint. *Martin v. Hilton Sacramento Arden West*, 2014 U.S. Dist. LEXIS 1158712, at *10 (E.D. Cal. Nov. 10, 2014); *accord Campbell v. Cal. Reconveyence Co.*, 2012 U.S. Dist. LEXIS 61250, at *4 (D. Ariz. May 2, 2012). The pleadings here are clear that the relevant time period of this lawsuit ends no later than 2011. In their original Complaint, filed on July 2, 2010, Relators said nothing about events after 2011, nor could they. Relators only alleged "false claims . . . from at least March 2005, continually through the present date." Compl. ¶ 1, ECF No. 1. The "present date" is the date of filing, July, 2, 2010, and therefore could not have related to any post-filing allegations. And Relators' First Amended Complaint is explicitly limited to the time period up to 2011: "This is an action to recover damages and civil penalties . . . *from at least March 2005, continually through 2011* . . . ." Am. Compl. ¶ 1, ECF No. 31 (emphasis added). Not only did Relators' complaints limit their allegations to 2011 or before, but Relators have conceded this fact multiple times to this Court and to Defendants. For example, Relators represented that the time period in this case was limited to 2011 in their Opposition to Defendants' Motion to Dismiss at 1, ECF No. 36; to this Court in the Early Neutral Evaluation Conference on May 16, 2014; in their Initial Disclosures, dated June 19, 2014 at 2; in the Joint 26(f) Conference Report at 4, 5, ECF No. 49 and in their Supplemental Initial Disclosures, dated July 11, 2014 at 2. Further, Judge Sammartino also identified the time period as ending in

5
**JOINT STATEMENT OF THE PARTIES ON PLAINTIFFS
MOTION TO COMPEL**

2011. ECF No. 41 at 3 ("Relators allege that, *from 2005 to 2011*, Ashford's compensation practices violated the Safe Harbor Regulation . . . ." (emphasis added)). Finally, at his deposition, Relator Carter specifically admitted that relators have no basis for any claims after 2011. Carter Dep. at 203:21-24 ("The enrollment of students did not have an effect on whether or not our salary went up or down after 2012 because they got rid of the matrix.").

### C. Backup Databases

1. **Plaintiffs' Requests**: The Plaintiffs requested all documents within the Defendants' control.

2. **Defendants' Response**: "Pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), Defendants identify back-up tapes in its possession, custody, or control as sources from which it will not provide discovery of electronically stored information on account of the fact that such sources are not reasonably accessible because of undue burden or cost.  Additionally, due to the dates involved in this litigation, Defendants are aware that there may be, and hereby identify, deleted data and legacy data from obsolete systems in their possession, custody, or control as sources from which they will not provide discovery of electronically stored information on account of the fact that such sources are not reasonably accessible because of undue burden or cost.  Accordingly, and consistent with Federal Rule of Civil Procedure 26(b)(2)(B), Defendants will not

provide discovery from these sources. Defendants agree to meet and confer further with Relators regarding this matter."

    3.    **Statement by Propounding Party**: Post-2011 data should be produced for the reason stated above. For earlier data, Bridgepoint seeks refuge in Rule 26(b)(2)(B). But that rule makes clear that electronic data is just as subject to discovery as paper documents, and backup tapes are to be considered no differently. *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D.Minn.2002). Here, Bridgepoint contends that the format in its earlier tapes is different from its later databases. This would mean Bridgepoint intentionally altered the format of its systems in the face of state investigations and private securities and consumer fraud actions. For instance, in Bridgepoint's 2011 annual report, it stated that it intended to comply with the Iowa Attorney General's civil investigative demand for documents from 2008 forward, all of which would be relevant to this litigation. Bridgepoint also faces securities litigation – and is subject to discovery – related to statements it made to investors about its accreditation issues in *In re Bridgepoint Education Inc. Securities Liti*gation, No. 3-12-cv-01737-jm-wmc (S.D.Cal.), dkt 26, 39 (motion to dismiss denied). Moreover, the Senate committee chaired by Senator Harkin and Education Department OIG found that Bridgepoint manipulated its matrixes in violation of the recruiter compensation laws. *See* Harkin Report at 303, footnote 1208. Thus, the relevant information Relators seek is neither "inaccessible" nor unduly

JOINT STATEMENT OF THE PARTIES ON PLAINTIFFS MOTION TO COMPEL

burdensome for Bridgepoint to produce. Bridgepoint must have anticipated that such material would be requested from the company. Nonetheless, in the face of litigation and investigations, including the two year Senate investigation, Bridgepoint decided to intentionally alter the format of its data so to make such relevant discovery inaccessible, invisible and/or "too closely" to access. This appears to be a form of intentional spoliation.

**4. Defendants' Basis for Objections:** The crux of this case is whether Enrollment Advisors were compensated in violation of the incentive compensation provision of the Higher Education Act. Therefore, relevant materials would include those materials that demonstrate *how* Enrollment Advisors were compensated. Defendants have already agreed to produce materials that go directly to this issue, including over 5,000 reviews and compensation changes that show exactly how enrollment employees were compensated. Yet Relators now want email correspondence, which do not directly demonstrate how Enrollment Advisors were compensated and are inaccessible because they reside on backup tapes. In accordance with regular business practices, email data from 2011 and before was moved to backup tapes long before this case was unsealed in January 2013. Therefore, there was no obligation on Defendants to keep this material in active format. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("The duty to preserve is triggered when litigation is pending or reasonably foreseeable."). Defendants

are not required to provide discovery from backup tapes because of undue burden and cost. Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies are not reasonably accessible because of undue burden or cost."); *Zubulake v. UBS Warburg* LLC, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) (*"Zubulake I"*); see also *Quinby v. WestLB AG*, 2005 U.S. Dist. LEXIS 35583, at *22 (S.D.N.Y. Dec. 15, 2005) ("Backup tapes are considered an inaccessible format and not readily usable."). The backup tapes at issue here were for disaster recovery purposes, are not accessible, and would be incredibly burdensome to restore and access. Cost estimates for restoring, processing, and filtering data for *just the backup tapes for the end of 2011*, would easily exceed $50,000, and it would take months just restore the tapes. This is a tremendous burden for a process that Defendants have no obligation to perform. Nevertheless, Defendants proposed to restore backup tapes created in the latter part of 2011. Refusing this reasonable proposal, Relators continue to demand *all backup tapes ever in existence*, which would take years to restore and cost millions of dollars. If Relators want more than what has already been proposed (which is beyond what is required by the Rules), Relators should pay the cost. See Fed. R. Civ. P. 26(b)(2)(B); Advisory Committee's Notes on Fed. R. Civ. P. 26 (2006 Amendment) ("The conditions may also include payment by the requesting party of part or all of the reasonable costs of obtaining information from sources that are not reasonably accessible.")

### D. Format of Emails to be Produced

1. **Plaintiffs' Requests**: The Plaintiffs instructed Bridgepoint to "produce each original document with all non-identical copies and drafts of that document."

2. **Defendants' Response:** "Defendants will likely produce documents in electronic form, such as single-branded TIFF images."

3. **Statement by the Propounding Party**: Defendants refuse to produce emails in TIFF format even though Rule 34 of the Federal Rules of Civil Procedure (b)(2)(E)(ii) requires that "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Defendants refuse to comply with this rule. In so doing, Bridgepoint once again seeks to conceal relevant information, including metadata, and to make it prohibitively costly for Relators to search for such information.

4. **Defendants' Basis for the Objection**: Defendants see no benefit to producing emails in native format and have proposed producing these in tiff format. Producing native emails would result in a host of issues including the inability to redact information and the need to withhold entire families of emails should one member of the family have privileged or FERPA information. Relators have not articulated why they wish to receive emails in native format.

The parties declare that they have met and conferred in accordance with this

10

**JOINT STATEMENT OF THE PARTIES ON PLAINTIFFS MOTION TO COMPEL**

Court's requirements.

Dated:  December 1, 2014				ISAACS FRIEDBERG & LABATON LLP


						/s/  Mark I. Labaton
						Mark I. Labaton
						Attorneys for Relators


Dated: December 1, 2014				GARDNER CORNELL


						/s/  Timothy Cornell
						Timothy Cornell
						Attorneys for Relators


Dated: December 1, 2014				GIBSON, DUNN & CRUTCHER LLP


						/s/  James L. Zelenay
						James L. Zelenay Jr.
						Attorneys for Defendants

**JOINT STATEMENT OF THE PARTIES ON PLAINTIFFS
MOTION TO COMPEL**

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is: Isaacs Friedberg & Labaton, 555 South Flower Street, Suite 4250, Los Angeles, California 90071.

On December 1, 2014 I served a copy of the following document(s) described as

**JOINT STATEMENT OF THE PARTIES ON PLAINTIFFS MOTION TO COMPEL**

on the interested party(ies) in this action as follows:

[X]   **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope(s) addressed asabove and placing each for collection and mailing on that date following ordinary business practices. I am "readily familiar" with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

[ ]   **BY MESSENGER SERVICE:** I served the documents by placing them in an envelope or package addressed to the persons listed below and providing them to a professional messenger service for service.

[X]   **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an Agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[X]   **FEDERAL:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 1, 2014 at Los Angeles, California.

/s/ Pamela M. Gioitta-Zimmer
Pamela M. Gioitta-Zimmer

**SERVICE LIST**

Tim J. Hatch
**Marcellas McCrae**
James L. Zelenay
Stephanie Kim
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA   90071
Phone:  (213) 229-7449
Fax:  (213) 229-6449
JZelenay@gibsondunn.com
Thatch@gibsondunn.com
MMcrae@gibsondunn.com
Skim@gibsondunn.com

2

130226.1