# EXHIBIT B

| | |
|---|---|
| **From:** | Ochsenbein, Jeremy S. <JOchsenbein@gibsondunn.com> |
| **Sent:** | Wednesday, December 10, 2014 6:12 PM |
| **To:** | Mark Labaton |
| **Cc:** | Oren Rosenthal; Timothy Cornell; Jim Moody; Amy Yeh; Hatch, Timothy J.; Zelenay Jr., James L.; McRae, Marcellus |
| **Subject:** | Response to Questions from Friday's Meet and Confer |

Mark,

First, I wanted to introduce myself as I will be now be working on this matter as part of the Gibson Dunn team.

Second, in response to your questions sent late last Friday evening, here is the information we have been able to obtain:

- Bridgepoint currently maintains 8 in-house servers for email, 4 each in San Diego and Phoenix. These servers have been in place since the end of 2009.

- Until late 2009, email was managed using Outlook 2003. At that time, it was transitioned to Outlook 2010.

- During the relevant time period, Symantec Backup was used to archive emails.

- Bridgepoint uses LTOs for its backup tapes. The back-up tapes are extremely large, with some exceeding one terabyte of data. Additionally, the tapes are encrypted and require specific equipment to read, meaning only one tape can be restored at a time. Given this fact, and the size of the tapes, a restoration involving ten tapes could take as long as three weeks.

- We are aware of only one case where back-up tapes from the relevant period were restored, and that case involved restoration of tapes from only one date during the period relevant in this case (November 2011) and only for a small number of custodians. That process has taken <u>8 months</u> to restore, filter, and begin producing materials from the tapes, because of the difficulty in restoring these massively large, encrypted tapes. As I'm sure you appreciate, restoration is only the first step in a process of obtaining materials from back-ups. Following restoration, tapes need to be indexed and cataloged (and this would have to happen with the tapes previously restored for November 2011 if new custodians were added). The cost of the first step – restoration alone – in this other case cost $15,000 for a total of 20 tapes. There is equipment in place from this previous restoration effort, but if numerous tapes / dates were added there would be the likely need to obtain a second replication environment for restoration at a cost of approximately $50,000.

- The backup process did not result in an purging of email. Email is only deleted at the user level, but the vast bulk of users at mailbox size limits of 250 MB. As a result, as users reached their mailbox size limits, they would delete older emails and only keep what they wanted. Because this was the process, there is no log of emails that were deleted.

- Since the end of 2010 to the end of the relevant period here, backups were conducted on virtually a daily basis. Each tape would include any emails that were on the server at the end of the day. This would include whatever was left in the user's email box. Unless email was specifically "hard deleted" by a user, any regularly deleted emails would remain on the background server (and be subject to back up) for 60 days following the deletion.

- Generally, only active emails are maintained on end user computers.  Individual users may choose to archive using .PST files or by converting emails to PDFs.  However, the decision to do so is the choice of the individual user.

- We will not agree to provide you all litigation retention policies in place for all times at Bridgepoint/Ashford.  These materials are not only irrelevant, but are also privileged.  Suffice it to say that there was no retention policy in place by the end of 2011 (the relevant period here) requiring all emails of all enrollment employees or others who may know of enrollment matters to retain any and all emails regarding compensation.  Nor was there even any remote requirement that such a retention policy be issued.

**Jeremy S. Ochsenbein**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5773 • Fax +1 303.313.2850
JOchsenbein@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

---

| | |
|---|---|
| **From:** | Ochsenbein, Jeremy S. <JOchsenbein@gibsondunn.com> |
| **Sent:** | Thursday, December 11, 2014 7:05 PM |
| **To:** | Mark Labaton |
| **Cc:** | Oren Rosenthal; Timothy Cornell; Jim Moody; Amy Yeh; Hatch, Timothy J.; Zelenay Jr., James L.; McRae, Marcellus |
| **Subject:** | RE: Response to Questions from Friday's Meet and Confer |

Mark,

We wanted to update you on some additional information that we received that relates to your questions posed last Friday.

- We were informed today that there was a recent restoration project involving 44 backup tapes involving 140 custodians.  The cost of this project was approximately $30,000 for the restoration alone (excluding any processing or other charges).

- We were also informed that, after additional research, the cost of new equipment to construct a second environment was $40,000, instead of the $50,000 that was referenced in the email yesterday.

Best regards,
**Jeremy S. Ochsenbein**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5773 • Fax +1 303.313.2850
JOchsenbein@gibsondunn.com • www.gibsondunn.com

---

**From:** Ochsenbein, Jeremy S.
**Sent:** Wednesday, December 10, 2014 7:12 PM
**To:** 'Mark Labaton'
**Cc:** Oren Rosenthal; Timothy Cornell; Jim Moody; Amy Yeh; Hatch, Timothy J.; Zelenay Jr., James L.; McRae, Marcellus
**Subject:** Response to Questions from Friday's Meet and Confer

Mark,

First, I wanted to introduce myself as I will be now be working on this matter as part of the Gibson Dunn team.

Second, in response to your questions sent late last Friday evening, here is the information we have been able to obtain:

- Bridgepoint currently maintains 8 in-house servers for email, 4 each in San Diego and Phoenix.  These servers have been in place since the end of 2009.

- Until late 2009, email was managed using Outlook 2003.  At that time, it was transitioned to Outlook 2010.

- During the relevant time period, Symantec Backup was used to archive emails.

1

- Bridgepoint uses LTOs for its backup tapes. The back-up tapes are extremely large, with some exceeding one terabyte of data. Additionally, the tapes are encrypted and require specific equipment to read, meaning only one tape can be restored at a time. Given this fact, and the size of the tapes, a restoration involving ten tapes could take as long as three weeks.

- We are aware of only one case where back-up tapes from the relevant period were restored, and that case involved restoration of tapes from only one date during the period relevant in this case (November 2011) and only for a small number of custodians. That process has taken <u>8 months</u> to restore, filter, and begin producing materials from the tapes, because of the difficulty in restoring these massively large, encrypted tapes. As I'm sure you appreciate, restoration is only the first step in a process of obtaining materials from back-ups. Following restoration, tapes need to be indexed and cataloged (and this would have to happen with the tapes previously restored for November 2011 if new custodians were added). The cost of the first step – restoration alone – in this other case cost $15,000 for a total of 20 tapes. There is equipment in place from this previous restoration effort, but if numerous tapes / dates were added there would be the likely need to obtain a second replication environment for restoration at a cost of approximately $50,000.

- The backup process did not result in an purging of email. Email is only deleted at the user level, but the vast bulk of users at mailbox size limits of 250 MB. As a result, as users reached their mailbox size limits, they would delete older emails and only keep what they wanted. Because this was the process, there is no log of emails that were deleted.

- Since the end of 2010 to the end of the relevant period here, backups were conducted on virtually a daily basis. Each tape would include any emails that were on the server at the end of the day. This would include whatever was left in the user's email box. Unless email was specifically "hard deleted" by a user, any regularly deleted emails would remain on the background server (and be subject to back up) for 60 days following the deletion.

- Generally, only active emails are maintained on end user computers. Individual users may choose to archive using .PST files or by converting emails to PDFs. However, the decision to do so is the choice of the individual user.

- We will not agree to provide you all litigation retention policies in place for all times at Bridgepoint/Ashford. These materials are not only irrelevant, but are also privileged. Suffice it to say that there was no retention policy in place by the end of 2011 (the relevant period here) requiring all emails of all enrollment employees or others who may know of enrollment matters to retain any and all emails regarding compensation. Nor was there even any remote requirement that such a retention policy be issued.

**Jeremy S. Ochsenbein**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1801 California Street, Denver, CO 80202-2642
Tel +1 303.298.5773 • Fax +1 303.313.2850
JOchsenbein@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

---